## LAIN v. SIMON.

1. Where a mortgagee assigned his chattel mortgage to a stranger after giving consent to a purchase of the chattel by another party, and a guaranty that the mortgage should never be used against the purchaser, who was afterwards compelled to pay a second time for such property, the purchaser has a just claim against the mortgagee for the damages to which he (the purchaser) has been subjected by reason of the assignment of the mortgage.

2. Even if the purchaser could by legal proceedings have prevented a sale of the chattel under the mortgage, he nevertheless would be entitled to recover for the damages caused him by the fraudulent act of the mortgagee.

3. Under the plaintiff's action for damages for fraud, he might recover damages for the breach of defendant's guaranty, especially so, as the breach was caused by defendant's fraudulent transfer of his mortgage.

Before HUDSON, J., Barnwell, March, 1882.

The opinion fully states the case.

*Mr. L. B. O'Bryan,* for appellant.

*Mr. J. J. Brown,* contra.

April 20th, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. The defendant, Nathan Simon, held a mortgage on a horse given to secure a note for $75, payable October 1st, 1879. The mortgagor desiring to trade the horse to O. A. Lain, the plaintiff, for a mule, obtained authority from Simon to do so. The terms having been agreed upon, Lain went to Simon to obtain his consent, and Simon told him " that the mortgage should never be used against him." On October 29th, 1879, Simon, for valuable consideration, " assigned all his right, title and interest in the within mortgage to Mantoue & Co.", who, in December, 1879, seized the horse while in the possession of a third party, to whom it had been sold by Lain, and sold it under the mortgage, the plaintiff, Lain, knowing of the sale. Lain then "had to return the purchase-money " to the person to whom he had sold the horse, and from whom it had been taken under the mortgage, and on January 8th, 1880, commenced this action against Simon for damages for fraud."

The case was submitted to the Circuit judge for trial, without a jury, who, after finding the facts substantially as above stated, held that Simon was estopped from any use of the mortgage, and that the transfer to Mantoue & Co., and subsequent sale of the horse by them under the mortgage, was a palpable fraud on the rights of the plaintiff, on the part of Simon, for which he is responsible. He, therefore, rendered judgment for the plaintiff for $100, the value of the horse, and for the costs of the action.

From this judgment the defendant appeals upon the following grounds: " 1. Because the action by the assignees, Mantoue & Co., could not have prejudiced any set-off or other defense of the plaintiff existing at the time of the assignment. 2. Because the plaintiff not having been prejudiced in any defense he had at the time of the assignment, has not been damaged or deprived of his

rights by the said assignment to Mantoue & Co. 3. Because Simon having released his claim over the horse, the subsequent assignment to Mantoue & Co. carried only Simon's interest, which was nothing, and could not damage plaintiff. 4. Because plaintiff had a good and valid title to the horse, and not having objected to the sale of him under the said mortgage, he cannot now bring his action against the assignor, who is only responsible to the assignee for consideration of assignment. 5. Because the debt was unpaid, and there being no consent to discharge the same, the mortgagor had a right to assign the mortgage, and was not responsible for the action of Mantoue & Co., who only held the interest of assignor."

We do not see how there can be a doubt that Simon perpetrated a fraud in assigning the mortgage after giving plaintiff a guaranty that it should not be used against him, and thereby inducing the plaintiff to part with his property. And there is as little doubt that one of the results of that fraud was to cause a loss to the plaintiff of the value of the horse sold under the mortgage, which was thus fraudulently assigned; and it would seem to follow necessarily that the party injured had a just claim for damages against the party whose fraud caused the injury. The defense seems to be based upon the idea that, inasmuch as the plaintiff had it in his power to prevent the sale of the horse under the mortgage, and thereby avoid the injury thus done him, and having failed to exercise it, he cannot now complain of a result which he had the means of preventing. This is an attempt to apply the doctrine of contributory negligence to a case in which we do not think it applicable. That doctrine applies where the action is based upon the negligence of the defendant, and not where it is based upon his fraud.

There are many cases in which a person who has sustained an injury from the fraud or other misconduct of another, where he might have taken measures to prevent such injury, and yet his failure to do so would not deprive him of the right to recover damages from the party whose fraud or other misconduct has caused the injury. It would scarcely do to say that a party who has been beaten lost his right to recover damages for such a trespass upon his person because it was made to appear that by a

proper use of his physical powers, or by taking advantage of an opportunity to escape from his assailant, he might have entirely protected himself from such injury. So, too, if a person should be induced to buy property by the false representations of another as to its quality or title, it would hardly be a defense to an action for damages sustained by reason of such fraudulent misrepresentations to show that the party injured might, if he had used proper diligence, instead of relying upon such representations, have been able to ascertain that they were false and fraudulent, and thus have escaped the injury of which he complains. A party injured oftentimes has a choice of remedies—a right to make his own selection of the manner in which he shall seek redress for a wrong done to him, and when he does so the wrong-doer cannot say to him, "You have failed to make use of the most effective remedy which the law afforded you, and therefore you cannot avail yourself of the one which you have selected."

In this case, Mantoue & Co., by the assignment of the mortgage, acquired no higher right than Simon, their assignor, had; they may be regarded as standing in his shoes, and, in selling the horse under the mortgage, exerted only the power which Simon had conferred upon them. They were, so to speak, his agents, and their act was his. Now, if Simon had himself seized and sold the horse under the mortgage, in violation of his express assurance to Lain, "that the mortgage should never be used against him," there can be no doubt but that he would have been liable to Lain for any damages which he might thereby have sustained, even though Lain may have had the right to prevent the sale by instituting proper proceedings for that purpose. Lain would have had a choice of remedies, and it might be that to institute proper proceedings to enjoin the sale would involve more trouble and expense than he was willing to encounter, and that he preferred to fall back upon his action for damages, as he undoubtedly would have the right to do. If this be so, then, as Mantoue & Co. stood in the shoes of Simon and could only exercise such power as he had conferred upon them, their act was practically his act, and the same principle

S

would apply as if the seizure and sale had been made directly by Simon.

There is another view of this case, which must be conclusive. Simon gave to Lain an express guaranty, not merely that he would not use the mortgage against him, but "that the mortgage should never be used against him," and, upon the faith of such guaranty, Lain parted with his mule, and took in exchange therefor the horse, covered by the mortgage. At the time this guaranty was made, Simon had the means of making it good, as he then had the control of the mortgage, and, of course, no one could use it without his consent. But the mortgage was used by a third party, who was empowered to do so by the fraudulent act of Simon, and the use thus wrongfully made of the mortgage, in violation of Simon's express guaranty to Lain, has resulted in damage to Lain, and we are unable to see any reason why he cannot recover the amount of such damages. For, although the action is for damages for fraud, and is not based upon the breach of the guaranty, yet, under the liberal principles of the code, the plaintiff may, if necessary, fall back upon the violation of the guaranty, especially when such violation was caused by, and accompanied with, the fraudulent act of the defendant in transferring a mortgage which he knew at the time he had no right to transfer.

The judgment of this court is that the judgment of the Circuit Court be affirmed.